# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF UTAH

| | |
|---|---|
| **LORI A.,**<br><br>         **Plaintiff,**<br><br>v.<br><br>**KILOLO KIJAKAZI,**<br>**Acting Commissioner of Social Security,**<br><br>         **Defendant.** | **MEMORANDUM DECISION**<br>**AND ORDER**<br><br><br>**Case No. 1:21-cv-00101-JCB**<br><br><br>**Magistrate Judge Jared C. Bennett** |

Under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, all parties have consented to Judge Jared C. Bennett conducting all proceedings in this case, including entry of final judgment.[1] Before the court is Plaintiff Lori A.'s ("Plaintiff") appeal of Acting Commissioner of Social Security Kilolo Kijakazi's ("Commissioner") final decision determining that Plaintiff was not entitled to Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.[2] After careful consideration of the written briefs and the complete record, the court concludes that oral argument is not necessary. Based upon the analysis set forth below, the court reverses the Commissioner's decision and remands this case further proceedings.

---

[1] ECF No. 12.

[2] 42 U.S.C. §§ 401-434.

## PROCEDURAL BACKGROUND

Plaintiff alleges disability due to various physical and mental impairments. In April 2019, Plaintiff applied for DIB.[3] Plaintiff's applications were denied initially[4] and upon reconsideration.[5] On December 1, 2020, Plaintiff appeared with counsel for a telephonic hearing before an Administrative Law Judge ("ALJ").[6] Later the same month, the ALJ issued a written decision denying Plaintiff's claims for DIB.[7] Plaintiff appealed the adverse ruling, and, on May 12, 2021, the Appeals Council denied her appeal,[8] making the ALJ's decision final for purposes of judicial review.[9] On July 16, 2021, Plaintiff filed her complaint in this case seeking review of the Commissioner's final decision.[10]

## STANDARD OF REVIEW

This court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied."[11] The Commissioner's findings, "if supported by substantial evidence,

---

[3] ECF Nos. 15-16, Administrative Record ("AR ___") 200-06.

[4] AR 69.

[5] AR 84.

[6] AR 35-55.

[7] AR 17-34.

[8] AR 1-6.

[9] 42 U.S.C. § 405(g); 20 C.F.R. § 404.981.

[10] ECF No. 4.

[11] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotations and citation omitted).

shall be conclusive."[12] "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance."[13] "In reviewing the ALJ's decision, [this court may] neither reweigh the evidence nor substitute [its] judgment for that of the [ALJ]."[14] "The [f]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed [are] grounds for reversal."[15]

The aforementioned standards apply to the Commissioner's five-step evaluation process for determining whether a claimant is disabled.[16] If a determination can be made at any one of the steps that a claimant is or is not disabled, the subsequent steps need not be analyzed.[17]

> Step one determines whether the claimant is presently engaged in substantial gainful activity. If [she] is, disability benefits are denied. If [she] is not, the decision maker must proceed to step two: determining whether the claimant has a medically severe impairment or combination of impairments. . . . If the claimant is unable to show that [her] impairments would have more than a minimal effect on [her] ability to do basic work activities, [she] is not eligible for disability benefits. If, on the other hand, the claimant

---

[12] 42 U.S.C. § 405(g).

[13] *Lax*, 489 F.3d at 1084 (quotations and citation omitted).

[14] *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006) (quotations and citation omitted).

[15] *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (first alteration in original) (quotations and citation omitted).

[16] 20 C.F.R. § 404.1520(a)(4)(i)-(v); *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step process).

[17] 20 C.F.R. § 404.1520(a)(4); *see also Williams*, 844 F.2d at 750.

presents medical evidence and makes the *de minimis* showing of medical severity, the decision maker proceeds to step three.[18]

At step three, the claimant must show that his or her impairments meet or equal one of several listed impairments that are "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience."[19] "If the impairment is listed and thus conclusively presumed to be disabling, the claimant is entitled to benefits. If not, the evaluation proceeds to the fourth step . . . ."[20] Before considering step four, however, the ALJ must determine the claimant's residual functional capacity ("RFC").[21] An individual's RFC is her greatest ability to do physical and mental work activities on a regular and continuing basis despite limitations from her impairments.[22] In making this determination, the ALJ must consider all of the claimant's impairments, including impairments that are not severe.[23]

At the fourth step, the claimant must show, given her RFC, that her impairments prevent performance of her "past relevant work."[24] "If the claimant is able to perform [her] previous

---

[18] *Williams*, 844 F.2d at 750-51 (quotations and citations omitted); *see also* 20 C.F.R. § 404.1520(a)(4)(i)-(ii).

[19] 20 C.F.R. § 404.1525(a); *see also id*. § 404.1520(a)(4)(iii).

[20] *Williams*, 844 F.2d at 751.

[21] 20 C.F.R. § 404.1520(e).

[22] *Id*. § 404.1545(a)(1), (b)-(c).

[23] *Id*. § 404.1545(a)(2).

[24] *Id*. § 404.1520(a)(4)(iv).

work, [she] is not disabled."[25] If, however, the claimant is not able to perform her previous work, she "has met [her] burden of proof, establishing a prima facie case of disability."[26]

At this point, "[t]he evaluation process . . . proceeds to the fifth and final step," where the burden of proof shifts to the Commissioner.[27] The decision maker must determine "whether the claimant has the [RFC] to perform other work in the national economy in view of [her] age, education, and work experience."[28] If it is determined that the claimant "can make an adjustment to other work," she is not disabled.[29] If, on the other hand, it is determined that the claimant "cannot make an adjustment to other work," she is disabled and entitled to benefits.[30]

## ANALYSIS

Plaintiff argues that the ALJ committed reversible error by considering Plaintiff's mental impairments only at step two and failing to conduct a separate, more detailed assessment of Plaintiff's mental impairments when determining Plaintiff's RFC. As demonstrated below, the court agrees with Plaintiff's argument. Therefore, the court reverses the Commissioner's decision and remands this case for further proceedings.

---

[25] *Williams*, 844 F.2d at 751.

[26] *Id.*

[27] *Id.*

[28] *Id.* (quotations and citation omitted); *see also* 20 C.F.R. § 404.1520(a)(4)(v).

[29] 20 C.F.R. § 404.1520(a)(4)(v).

[30] *Id.*

When considering a claimant's mental impairments at steps two and three of the sequential evaluation process, the ALJ is required to follow a specific technique for evaluating the severity of those impairments and their effect on the claimant's ability to work.[31] Under that technique, the ALJ must first determine whether the claimant has a medically determinable mental impairment.[32] If the claimant does have such an impairment, the ALJ must then consider the degree of functional limitation resulting from the impairment in four broad functional categories: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.[33] The relevant regulation provides a scale for the ALJ to use in rating the claimant in each of those areas.[34] Those ratings are used to support the ALJ's conclusions at steps two and three.[35]

When an ALJ moves on to assessing a claimant's RFC, the ALJ must account for all functional limitations resulting from the claimant's impairments, both severe and non-severe.[36] In determining a claimant's RFC, the ALJ cannot rely upon a finding of non-severity at step two

---

[31] *Id*. § 404.1520a(a).

[32] *Id*. § 404.1520a(b)(1).

[33] *Id*. § 404.1520a(b)(2), (c)(3).

[34] *Id*. § 404.1520a(c)(4).

[35] *Id*. § 404.1520a(d).

[36] *Id*. § 404.1545(a)(2) (providing that the ALJ must "consider all of [a claimant's] medically determinable impairments . . . , including [the claimant's] medically determinable impairments that are not 'severe,'" when assessing the claimant's RFC); *see also* SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996) ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'").

as a substitute for a more thorough RFC analysis.[37] In *Wells*, the court stated that when an ALJ finds non-severe mental impairments at step two, that finding cannot support omitting mental impairments from the RFC determination.[38] Instead, an ALJ must engage in an adequate RFC analysis by considering the functional limitations resulting from those impairments.[39]

In this case, at step two, the ALJ employed the above-referenced technique and determined that Plaintiff had mild limitations in each of the four categories.[40] The ALJ went on to conclude that "[b]ecause [Plaintiff]'s medically determinable mental impairments cause no more than 'mild' limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in [Plaintiff]'s ability to do basic work activities, they are non[-]severe."[41] After reaching that conclusion, the ALJ recognized that the limitations he had identified at step two "are not [an RFC] assessment but are used to rate the severity of mental impairments at step 2 and 3 of the sequential evaluation process" and that "[t]he mental [RFC] assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment."[42] The ALJ went on to state that his RFC assessment "reflects the degree of limitation [he] found" in the analysis at step two.[43] However, the ALJ's

---

[37] *Wells v. Colvin*, 727 F.3d 1061, 1068-69, 1071 (10th Cir. 2013).

[38] *Id.*

[39] *Id.*

[40] AR 24-25.

[41] AR 25-26 (emphasis omitted).

[42] AR 26.

[43] *Id.*

discussion supporting his RFC assessment contains no reference to or any limitations imposed by Plaintiff's mental impairments.[44]

Thus, despite the ALJ's recognition that he needed to conduct "a more detailed assessment"[45] of Plaintiff's mental impairments when determining Plaintiff's RFC than the assessment of those impairments at step two, the ALJ failed to do so. Indeed, as noted above, the ALJ's RFC assessment fails to provide any discussion of Plaintiff's mental impairments or any limitations resulting from those impairments. That failure constitutes an error that requires reversal and remand.[46]

The Commissioner contends that reversal and remand is not required because: (1) the ALJ's step-two findings did not mandate inclusion of any mental limitations in Plaintiff's RFC; (2) the ALJ's discussion at step two provides substantial evidence to support the ALJ's RFC determination; (3) a case from the United States Court of Appeals for the Tenth Circuit, *Suttles v. Colvin*,[47] permits the court to affirm; and (4) this case is distinguishable from *Wells*. Each argument's failure is addressed in order below.

---

[44] AR 26-29.

[45] AR 26.

[46] *Johnson v. Kijakazi*, No. 4:20-CV-00104 PK, 2021 WL 3709944, at *3-4 (D. Utah Aug. 19, 2021) (reversing and remanding where the ALJ: (1) determined that the plaintiff had only mild limitations in the four mental functioning areas; (2) concluded that the plaintiff's mental impairments were non-severe; (3) stated that the RFC assessment reflected the degree of limitation the ALJ had found at step two; and (4) failed to include any discussion in the RFC assessment of the plaintiff's asserted mental impairments and any limitations resulting from those impairments); *see also Wells*, 727 F.3d at 1068-69.

[47] 543 F. App'x 824 (2013).

8

The Commissioner's first argument misses the mark. Although the Commissioner may be correct in asserting that the ALJ's step-two findings did not mandate corresponding mental limitations in Plaintiff's RFC, that is a separate issue from the requirement that the ALJ consider Plaintiff's mental impairments when assessing Plaintiff's RFC. Here, there is no indication in the ALJ's RFC assessment that he considered Plaintiff's mental impairments in fashioning Plaintiff's RFC. Therefore, the Commissioner's first argument fails because it does not address the specific error the ALJ committed here.[48]

The Commissioner's second argument likewise fails. Importantly, the Commissioner does not cite to any authority to support the specific proposition that an ALJ's analysis at step two can constitute substantial evidence to support the ALJ's RFC assessment. Furthermore, the Commissioner's position runs contrary to the Commissioner's own policy interpretation indicating that the criteria used at steps two and three "are not an RFC assessment" and that "[t]he mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment."[49] In fact, the ALJ himself recognized this requirement and, therefore, stated that he would presumably conduct "a more detailed assessment"[50] of Plaintiff's mental impairments when assessing Plaintiff's RFC than the assessment of those impairments at

---

[48] *Johnson,* 2021 WL 3709944, at *4 ("The Commissioner responds by arguing that the ALJ was not obligated to include any mental limitations in Plaintiff's RFC. While this is decidedly true, this argument fails to address the salient issue. Though the ALJ was not required to include any mental limitations in the RFC, he is required to consider Plaintiff's mild mental impairments in assessing her RFC. This was not done." (footnote omitted)).

[49] SSR 96-8p, 1996 WL 374184, at *4.

[50] AR 26.

step two. Because the ALJ himself recognized the importance of this analysis, but failed to engage in it, the Commissioner's second argument is without merit.

The Commissioner's third argument attempts to analogize this case to *Suttles*. In that case, the plaintiff argued that the ALJ erred by finding that the plaintiff had mild limitations in one of the four functional categories but then failed to include any limitations related to that finding in the plaintiff's RFC.[51] The court rejected the plaintiff's argument and held "that the ALJ conducted a mental RFC assessment separate from the non-severity determination made at step two."[52] In reaching that conclusion, the court acknowledged the ALJ's step-two findings but noted that the ALJ recognized, as the ALJ did in this case, "that a distinct mental RFC assessment was still required at step four."[53] The court then quoted the following portion of the ALJ's decision, which is substantively similar to one of the portions of the ALJ's decision in this case quoted above:

> "The limitations identified . . . [at step two] are not a residual functional capacity assessment, but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing functions contained in the broad categories . . . [previously considered at steps two and three]."[54]

---

[51] *Suttles*, 543 F. App'x at 825.

[52] *Id*. at 826.

[53] *Id*.

[54] *Id*. (alterations in original).

The court also noted that "[a]t step four, the ALJ discussed evidence relating to depression and then pointedly omitted any limitation associated with that mental impairment [from] the RFC . . . , though the ALJ admittedly could have been more explicit in tying the former discussion to the latter conclusion."[55] Finally, the court noted that "[s]ignificantly, the ALJ did not make any ancillary statement, like that made by the ALJ in *Wells*, affirmatively suggesting an improper conflation of the step-two and step-four assessments."[56]

The Commissioner contends that, similar to the ALJ in *Suttles*, the ALJ in this case recognized that a separate mental RFC assessment was required and did not make any statements indicating that he was using his step-two findings to substitute for an adequate RFC analysis. Thus, the Commissioner asserts, this court should affirm the ALJ's decision as the *Suttles* court did.

However, the court disagrees because the Commissioner ignores one critical difference between this case and *Suttles*—namely, that the ALJ in *Suttles* included *some* discussion of the plaintiff's mental impairments when crafting the plaintiff's RFC. The fact that some discussion of mental impairments is contained in the RFC determination could allow a reviewing court to find that the ALJ made the appropriate consideration of mental health concerns during the more in-depth analysis of the RFC. Here, however, the ALJ failed to include *any* discussion of Plaintiff's mental impairments in the RFC assessment despite stating that he was going to engage in such analysis at the RFC stage. Consequently, this court lacks what the *Suttles* court had: some

---

[55] *Id.*

[56] *Id.*

11

indication that the ALJ adequately considered mental impairments, albeit mild, at the RFC formulation stage.

The Commissioner's final argument attempts to distinguish this case from *Wells*. As stated above, *Wells* stands for the proposition that an ALJ cannot rely upon step-two findings to substitute for an adequate RFC analysis.[57] Specifically, the *Wells* court stated that, based upon certain language in the ALJ's decision, the ALJ "may have relied on his step-two findings to conclude that [the plaintiff] had no limitation based on her mental impairments" and that, "[i]f so, this was inadequate under the regulations and the Commissioner's procedures."[58] The court went on to note that

> [n]otwithstanding [the ALJ's] previous statement about step-two findings, the ALJ did . . . separately discuss [the plaintiff's] mental impairments to some degree, when assessing her credibility as part of his RFC determination. This discussion, though far from comprehensive, might have satisfied the ALJ's obligation at step four to provide a more detailed assessment of [the plaintiff's] ability to complete various job functions as part of determining her RFC.[59]

The Commissioner maintains that, unlike the ALJ in *Wells*, the ALJ in this case did not include any language in his decision suggesting that he relied upon his finding of non-severity at step two to support his RFC assessment. Accordingly, the Commissioner argues that this case is distinguishable from *Wells*.

---

[57] *Wells*, 727 F.3d at 1068-69, 1071.

[58] *Id*. at 1069.

[59] *Id*.

The court disagrees. Although the ALJ here did not include any such language in his decision, his only discussion of Plaintiff's mental impairments took place at step two. This fact gives the court two analytical options, neither of which favors the Commissioner. On the one hand, the court can assume that the ALJ did *not* use his step-two analysis as a substitute for discussing mental impairments in the RFC. Indeed, the ALJ recognized at step two that he needed to engage in additional analysis of mental impairments later when assessing Plaintiff's RFC. However, even if the court so assumes, the ALJ did not engage in that analysis, and that is improper. On the other hand, if court assumes that the ALJ did in fact rely upon his step-two analysis to substitute for his RFC assessment, then he engaged in conduct that is specifically prohibited by *Wells*.[60] Thus, the ALJ's discussion of mental health impairments at step two with the unfulfilled promise to engage in further discussion when formulating the RFC puts the Commissioner between a rock and a hard place, and neither option distinguishes this case from *Wells* or allows the ALJ's decision to stand.

## CONCLUSION AND ORDER

As demonstrated above, the ALJ committed reversible error by considering Plaintiff's mental impairments only at step two and failing to conduct a separate, more detailed assessment of Plaintiff's mental impairments when determining Plaintiff's RFC. Additionally, all of the Commissioner's arguments on appeal fail. Therefore, IT IS HEREBY ORDERED that the Commissioner's decision is REVERSED AND REMANDED.

---

[60] Furthermore, as stated above, the *Wells* court indicated that the ALJ "might have satisfied" his duty to provide a more provide a more detailed assessment of Plaintiff's mental impairments and any corresponding limitations by separately discussing those impairments in the RFC assessment. *Id.* But here, the ALJ did not, which is why *Wells* is not distinguishable.

IT IS SO ORDERED.

DATED this 26th day of July 2022.

BY THE COURT:

JARED C. BENNETT
United States Magistrate Judge